**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CLEON JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 16-cv-09652 |
| v. | ) |
| | ) Judge Robert M. Dow, Jr. |
| MAYWOOD, MELROSE PARK, | ) |
| BROADVIEW SCHOOL DISTRICT 89, | ) |
| BOARD OF EDUCATION OF SCHOOL | ) |
| DISTRICT NO. 89, COOK, ILLINOIS, and | ) |
| DAVID BRUSAK, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cleon Jones brings claims against Defendants Maywood, Melrose Park, Broadview School District 89, Board of Education of School District No. 89, and David Brusak under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"). Before the Court are Defendants' motion for summary judgment [28] and Plaintiff's motion for summary judgment [34]. For the reasons set forth below, both Defendants' motion for summary judgment [28] and Plaintiff's motion for summary judgment [34] are denied. The denial of Defendants' motion as to Plaintiff's FMLA retaliation claim is without prejudice to renewal after the further exploration of the legal issues set out below. Both parties' motions for summary judgment as to Plaintiff's FMLA interference claim are denied. This case is set for further status on September 19, 2018 at 9:00 a.m.

## I. Background

The following facts are drawn primarily from the parties' Local Rule 56.1 statements of facts and supporting exhibits [30], [33], and [37]. These facts are undisputed except where a

dispute is noted.  The Court also addresses any of Defendants' relevant motions to strike portions of Plaintiff's Local Rule 56.1 statement of facts as necessary.

Plaintiff Cleon Jones ("Plaintiff") is a former employee of Defendant Maywood, Melrose Park, Broadview School District 89 ("School District").  Plaintiff began working for the School District in 2013 as a paraprofessional instructional assistant at Emerson Elementary School and remained in that position until he was terminated in June 2016.  [30 (Defs.' Stmt. of Facts), ¶¶ 1–2]; [33 (Pl.'s Stmt. of Facts), ¶ 63.]  The School District is overseen and controlled by Defendant Board of Education of School District No. 89 ("Board").  [25 (Answer), ¶ 8.]  Defendant David Brusak ("Brusak") is the Assistant Superintendent of Human Resources for the School District. [30 (Defs.' Stmt. of Facts), ¶ 7.]

## A. Relevant Policies

### 1. The School District's FMLA Policy

In 2015, the School District adopted a policy for its employees seeking to take FMLA-qualified leave.  This policy was in effect during the relevant time period for this action.  [30 (Defs.' Stmt. of Facts), ¶ 8.]  According to this FMLA policy, an eligible employee "may take FMLA leave for up to a combined total of 12 weeks each 12-month period, beginning September 1 and ending August 31 of the next year."  [*Id.* ¶ 9.]  One instance in which this FMLA leave is available is in the event of a "serious health condition of an employee's spouse, child, or parent." [30 (Defs.' Stmt. of Facts), ¶ 10]; [Ex. 5 to Ex. 2 (FMLA Policy), at 1].  The policy also provides that, in calculating an employee's FMLA leave entitlement, "[a]ny full workweek period during which the employee would not have been required to work, including summer break, winter break and spring break, is not counted against the employee's FMLA leave entitlement."  [30 (Defs.' Stmt. of Facts), ¶ 30]; [33 (Pl.'s Stmt. of Facts), ¶ 68]; [Ex. 5 to Ex. 2 (FMLA Policy), at 1].

As part of this FMLA Policy, an employee requesting FMLA leave must provide notice to the School District. The School District's FMLA Policy provides the following regarding the appropriate notice to request leave or to inform the School District of changed circumstances in connection with a leave request:

> Requesting Leave. If the need for the FMLA leave is foreseeable, an employee must provide the Superintendent or designee with at least 30 days' advance notice before the leave is to begin. If 30 days' advance notice is not practicable, the notice must be given as soon as practicable. * * * The employee shall provide at least verbal notice sufficient to make the Superintendent or designee aware that he or she needs FMLA leave, and the anticipated timing and duration of the leave. Failure to give the required notice for a foreseeable leave may result in a delay in granting the requested leave until at least 30 days after the date the employee provides notice.
>
> * * * *
>
> Changed Circumstances and Intent to Return. An employee must provide the Superintendent or designee reasonable notice of changed circumstances (i.e., within 2 business days if the changed circumstances are foreseeable) that will alter the duration of the FMLA leave. The Superintendent or designee, taking into consideration all of the relevant facts and circumstances related to an individual's leave situation, may ask an employee who has been on FMLA leave for 8 consecutive weeks whether he or she intends to return to work.

[30 (Defs.' Stmt. of Facts), ¶ 31]; [33 (Pl.'s Stmt. of Facts), ¶ 82]; [Ex. 5 to Ex. 2 (FMLA Policy), at 2–3].

The process for an employee of the School District to apply for FMLA leave is as follows. First, Human Resources sets up an appointment for the employee to meet with the Human Resources generalist. At this meeting, a Human Resources representative gives the prospective FMLA applicant a packet and reviews the necessary paperwork with the applicant. After this meeting, the applicant takes the FMLA paperwork, completes it as directed, and submits it to Human Resources. A generalist then reviews the paperwork to make sure it is complete before forwarding the completed paperwork to Brusak for a final review. If the paperwork meets the FMLA guidelines, Human Resources sends the paperwork to the Board for approval. If the Board

approves an FMLA request, Human Resources sends a notice to the applicant. [30 (Defs.' Stmt. of Facts), ¶¶ 11–17.]

### 2. The CBA's Reporting Absences Policy

While Plaintiff was employed by the School District, he was also subject to the terms of the collective bargaining agreement entitled "The Board of Education, School District 89, Service Employees' International Union" (the "CBA"). [30 (Defs.' Stmt. of Facts), ¶ 51.] The CBA contains a section entitled "Reporting Absences." This section provides that "[e]mployees must inform the district office of any absences by calling or entering information into AESOP by 7:00 a.m. Absence from work for three or more consecutive days without notifying the district, except in an emergency, will constitute a basis for dismissal." [*Id.* ¶ 52]; [Ex. C to Ex. 7 (CBA), § 5.04.]

According to School District practice regarding the reporting of absences, a "no call-no show" occurs when an employee does not show up for work and does not call into work to explain that they are not coming into work. [30 (Defs.' Stmt. of Facts), ¶ 41.] The School District asserts that "no call-no shows" by an employee may be grounds for termination, although Plaintiff maintains that progressive discipline is required prior to termination on this basis. [*Id.* ¶ 42]; [Ex. C to Ex. 7 (CBA), at 22–24.]

### B. Plaintiff's First FMLA Leave Request in February 2016

In early 2016, Plaintiff learned that his mother had been diagnosed with cancer. [30 (Defs.' Stmt. of Facts), ¶ 3]; [33 (Pl.'s Stmt. of Facts), ¶ 64.] Plaintiff submitted an FMLA request form to the School District on February 22, 2016 in order to request FMLA leave to care for his mother (the "February FMLA Request"). On this form, Plaintiff requested leave from February 23, 2016 through May 15, 2016. [30 (Defs.' Stmt. of Facts), ¶¶ 4–5]; [33 (Pl.'s Stmt. of Facts), ¶ 66.] Plaintiff filled out this form himself, although he disputes that he was the sole person who selected

the period of leave time requested. [30 (Defs.' Stmt. of Facts), ¶ 6]; [33 (Pl.'s Stmt. of Facts), ¶ 6.] The Board approved Plaintiff's FMLA request for this time period at its March 10, 2016 meeting. Defendant Brusak thereafter signed an official letter to Plaintiff on March 11, 2016, notifying Plaintiff that his request was approved. [30 (Defs.' Stmt. of Facts), ¶¶ 18–21.] Based on the Board's approval of his February FMLA Request, Plaintiff took FMLA leave for the period of February 23, 2016 through May 15, 2016. [*Id.* ¶ 22]; [33 (Pl.'s Stmt. of Facts), ¶ 65.]

The period encompassed by Plaintiff's February FMLA Request lasted for twelve calendar weeks. [30 (Defs.' Stmt. of Facts), ¶ 28.] However, the School District's 2016 spring break took place from March 25, 2016 through April 1, 2016, and thus fell within that twelve-week time frame. [*Id.* ¶ 29]; [33 (Pl.'s Stmt. of Facts), ¶ 69.] Because this week of spring break did not count against Plaintiff's FMLA entitlement, Plaintiff only used eleven weeks of his twelve-week allotment during the period approved by his February FMLA Request. However, at the time, the School District's Human Resources Department failed to account for this week of spring break in calculating Plaintiff's FMLA leave. Defendants characterize this as an inadvertent miscalculation. [30, (Defs.' Stmt. of Facts), ¶ 32.] Plaintiff disputes this characterization but, in any event, it is undisputed that in May 2016, Defendants considered Plaintiff's FMLA leave time for the 2015-2016 school year to be exhausted as of May 15, 2016, even though Plaintiff had one week of leave time remaining. [*Id.* ¶¶ 32, 62.]

## C.    Plaintiff's Second FMLA Leave Request in May 2016

In May 2016, Plaintiff spoke to William Bush, a Human Resources employee for the School District, about extending his FMLA leave during a meeting at the Human Resources office. No one else was present in the office during this conversation. [30 (Defs.' Stmt. of Facts), ¶¶ 23–25.] At this meeting, Bush told Plaintiff that Plaintiff was only entitled to twelve weeks of FMLA

leave and that his period of approved leave would end on May 16, 2016. Bush did not tell Plaintiff at any point during this meeting that Plaintiff had exhausted his available FMLA leave. [*Id.* ¶¶ 26–27]; [Ex. 8 (Bush May 9 E-mail)].

During Plaintiff's May meeting with Bush, Plaintiff submitted another FMLA leave request seeking additional leave time due to his mother's continued illness (the "May FMLA Request"). This request was signed and dated May 9, 2016, and requested further leave time beginning May 16, 2016 and ending September 30, 2016. [30 (Defs.' Stmt. of Facts), ¶¶ 33, 35]; [33 (Pl.'s Stmt. of Facts), ¶¶ 67, 80.] Although Plaintiff did have one week of FMLA leave remaining as of May 15, 2016, he did not submit an FMLA request to the School District for a one-week period only. [30 (Defs.' Stmt. of Facts), ¶¶ 34, 62.]

After receiving Plaintiff's May FMLA Request, Defendant Brusak denied it without submitting it to the Board for approval. Brusak testified at his deposition that he did not submit Plaintiff's request to the Board because it sought approximately fourteen weeks of additional FMLA leave, and Brusak therefore considered it improper on its face. [30 (Defs.' Stmt. of Facts), ¶ 36]; [33 (Pl.'s Stmt. of Facts), ¶ 83]; [Ex. 3 (Brusak Dep.), 59–60]. Although the time period covered by Plaintiff's May FMLA Request encompasses fourteen calendar weeks, Plaintiff disputes that this request actually encompasses fourteen weeks of FMLA leave. Specifically, Plaintiff points to the fact that summer break that year began after the last day of school on May 27, 2016. Plaintiff ordinarily would be finished with school for the year at that time and, according to the School District's FMLA policy, summer break does not count against an eligible employee's FMLA leave. Moreover, because the School District's FMLA period begins on September 1 and ends on August 31, the time that Plaintiff requested after September 1, 2016 would not count

towards his FMLA leave in the previous 2015-2016 school year.[1]  [30 (Defs.' Stmt. of Facts), ¶ 35]; [33 (Pl.'s Stmt. of Facts), ¶¶ 77–79]; [Ex. 5 to Ex. 2 (FMLA Policy), at 1].

Brusak mailed Plaintiff a letter dated May 11, 2016 notifying him that his May FMLA Request had been denied.  Plaintiff received this letter.  [30 (Defs.' Stmt. of Facts), ¶¶ 37–38.]  This letter explains that Plaintiff's request had been denied because he had already exhausted his twelve weeks of available FMLA leave as of May 16, 2016 and he was not entitled to more than twelve weeks of FMLA leave.  [Ex. 6 to Ex. 3 (May 11 Letter)].  At his deposition, Brusak further explained that the May FMLA Request was denied because it requested approximately fourteen additional weeks of FMLA leave time.  [30 (Defs.' Stmt. of Facts), ¶ 39.]  Brusak also testified that, to his knowledge, Plaintiff was not advised that he had one week of FMLA time remaining after May 15.  [33 (Pl.'s Stmt. of Facts), ¶ 81]; [Ex. 3 (Brusak Dep.), at 64.]  Plaintiff maintains that Brusak never advised him either that his May FMLA Request was denied based on the length of time it sought or that, if Plaintiff had only requested one more week of leave, the request would have been approved.  [33 (Pl.'s Stmt. of Facts), ¶ 87]; [Ex. 7 (Jones Aff.), ¶ 5].

### D.     Plaintiff's Termination

On May 9, 2016, Bush sent an e-mail to Plaintiff stating that his approved FMLA leave was set to expire on Friday May 13, 2016 and he was required to report back to work on May 16, 2016.  Bush sent another e-mail to Plaintiff on May 11, 2016 informing Plaintiff of the impending

---

[1] One of Plaintiff's statements of facts in his Local Rule 56.1 statement is that "[t]he School District's school year for FMLA purposes is from September 1 through the end of August the following year."  [33 (Pl.'s Stmt. of Facts), ¶ 79.]  Defendants have moved to strike this statement as a legal conclusion.  To the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies on inadmissible hearsay, such a fact is disregarded.  *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).  The Court will consider this statement, however, because it merely repeats language used by Defendant Brusak and the School District's own FMLA policy and does not state a legal conclusion.

end of his FMLA leave; Bush sent this message to Plaintiff via Certified Standard Mail with a Return Receipt as well. [30 (Defs.' Stmt. of Facts), ¶¶ 48–50.]

According to Defendants, even though his approved FMLA leave period had expired and he was scheduled to return to work, Plaintiff did not show up for work or call in to work on May 16–20 or May 23–27. [30 (Defs.' Stmt. of Facts), ¶ 40.] Plaintiff was marked as a no call-no show by the School District on May 16–20 and May 23. [*Id.* ¶¶ 43, 45–46.] Plaintiff disputes that all of these dates properly reflect no call-no shows, because the record reflects that he did call Brusak on May 17. Plaintiff also notes that he was not scheduled to work on May 24–27. [33 (Pl.'s Stmt. of Facts), ¶ 40.]

Defendant Brusak e-mailed Plaintiff on May 17, 2016, referencing a return call from Plaintiff to Brusak after Brusak's previous call to Plaintiff on that date. [33 (Pl.'s Stmt. of Facts), ¶ 86]; [Ex. 4 (May 17 Brusak E-mail).] In this e-mail, Brusak stated that Plaintiff was marked as a no call-no show on May 16 and May 17 and issued one write-up for those two days. Brusak also stated that for each day Plaintiff was absent in the future, he would be written up and issued progressive discipline, including possible termination. [30 (Defs.' Stmt. of Facts), ¶¶ 43–44]; [Ex. 4 (May 17 Brusak E-mail).] Plaintiff denies that he ever received this e-mail because it was sent to an e-mail account that he did not use. [33 (Pl.'s Stmt. of Facts), ¶¶ 43–44]; [Ex. 7 (Jones Aff.), ¶ 3.] Defendants also state that Brusak spoke to Plaintiff via phone on May 18, 2016 and reiterated this information, although Plaintiff disputes that this phone call occurred. [33 (Pl.'s Stmt. of Facts), ¶ 45.]

Brusak then prepared a Description of Job Performance dated May 23, 2016, summarizing Plaintiff's failure to call or show for work on May 16, May 17, May 18, May 19, May 20, or May 23. This document explained that the School District's Human Resources department made

several attempts to communicate with Jones through email and a telephone call. [30 (Defs.' Stmt. of Facts), ¶¶ 46–47]; [Ex. 4 (Description of Job Performance)]. The document also stated that Plaintiff's employment status would be amended to reflect unpaid administrative leave pending dismissal, and the Board would vote on the recommendation for dismissal for cause at its meeting scheduled for June 9, 2016. [Ex. 4 (Description of Job Performance).]

At the Board's June 9, 2016 meeting, Brusak informed the Board that a notice had been sent to Plaintiff informing him that his requested leave was coming to an end and that he was to return to work. The Board was also informed that Plaintiff failed to respond to those e-mails and failed to return to work. [30 (Defs.' Stmt. of Facts), ¶¶ 55–56.] Brusak recommended Plaintiff's termination to the Board, but he did not have the authority to terminate a School District employee; instead, the Board made the final decision on termination. [*Id.* ¶¶ 53–54.] At this meeting, the Board voted to terminate Plaintiff for failing to return to work when he was instructed to do so by Human Resources and for failing to communicate with Human Resources after they had sent Plaintiff notices regarding his absences. In a June 9, 2016 letter from Veronica Bonilla-Lopez, the Board's President at the time, Plaintiff was informed that after a review of the May 23, 2016 Description of Job Performance, related e-mails, and related attendance documentation, Plaintiff was recommended for termination for job abandonment and violation of the applicable CBA provision governing no call-no shows. [30 (Defs.' Stmt. of Facts), ¶¶ 57–59.]

According to Plaintiff, prior to his termination, he had never been disciplined by the School District. [33 (Pl.'s Stmt. of Facts), ¶ 72.] Defendants dispute this by pointing to the write-ups that Plaintiff received in May 2016 for not calling in or showing up for work beginning May 16. [37

(Defs.' Resp.), ¶ 72.]  There is no other evidence of disciplinary action against Plaintiff in the record.[2]

### E.      Procedural History

Plaintiff filed his complaint against Defendants on October 11, 2016, after receiving a right to sue notice from the Department of Justice.[3]  In his complaint, Plaintiff brought claims against Defendants for violation of the FMLA (Count I) and violation of his procedural and substantive due process rights (Count II).  [See 1 (Compl.), ¶¶ 30–48.]  The Court granted Defendants' motion to dismiss Count II on July 10, 2017.  [See 21.]  Discovery thereafter proceeded on Plaintiff's FMLA claim, and the parties have filed cross motions for summary judgment on that remaining claim.  [See 28; 34.]

## II.      Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.

---

[2] Plaintiff's Local Rule 56.1 statement includes three statements of fact regarding improper behavior by his school's principal, Principal Newsome that could point to other improper discipline of Plaintiff during his employment.  Specifically, these statements are that "Cleon Jones was subject to unwarranted check-ups by Principal Newsome to ensure that he was in his proper classroom at the right time," [33 (Pl.'s Stmt. of Facts), ¶ 73]; "Ms. Newsome had Jones' co-workers stop speaking to him," [*Id.* ¶ 74]; and "Cleon Jones was told by Principal Newsome that he was not to use the restroom upon arrival at the school," [*Id.* ¶ 75.]  Defendants have moved to strike these statements because they are not supported by the cited portions of the record.  The Court agrees and will strike paragraphs 73–75 from Plaintiff's Local Rule 56.1 statement.  The Court also notes that even if these paragraphs were not stricken, they are not material, as Plaintiff never provides any evidence that Ms. Newsome was involved in his FMLA leave approval or denial, that any conversations between Ms. Newsome and Defendants regarding these incidents ever happened, or that the Board considered these incidents in its termination decision.

[3] Plaintiff filed charges with the Equal Employment Opportunity Commission, and the claim was referred to the Department of Justice because the charges were against a public employer.  [1 (Compl.), ¶ 4.]

See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating a motion for summary judgment, the Court will construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016). Where, as here, the parties have submitted cross-motions for summary judgment, the Court "take[s] the motions one at a time, construing all facts and drawing all reasonable inferences in favor of the non-moving party." *Black Earth Meat Mkt., LLC v. Vill. of Black Earth*, 834 F.3d 841, 847 (7th Cir. 2016). However, the Court will not draw inferences that are "supported by only speculation or conjecture," *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)) (internal citations omitted), and "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892 (7th Cir. 2003).

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the non-moving party bears the responsibility of identifying evidence to defeat summary judgment. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To avoid summary judgment, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Summary judgment is proper if the non-moving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient;

there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**III.    Analysis**

Under the FMLA, an eligible employee is entitled to as many as twelve weeks of leave per year for a variety of reasons, including "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition."  29 U.S.C. § 2612(a)(1)(C); see also *Scruggs v. Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012).  In the only remaining count of his complaint, Plaintiff brings a claim for FMLA interference in violation of 29 U.S.C. § 2615(a)(1) and FMLA retaliation in violation of 29 U.S.C. § 2615(a)(2).  Defendants and Plaintiff have cross-moved for summary judgment on both the FMLA interference and FMLA retaliation claims.

As an initial matter, the Court notes that the central dispute regarding the interference and retaliation claims relates to the May FMLA Request and subsequent conduct, including Plaintiff's failure to return to work on May 16, 2016 and Defendants' ultimate termination of Plaintiff.  In other words, Defendants do not dispute that Plaintiff was entitled to the period of leave encompassed in the February FMLA Request, and Plaintiff does not dispute that he was provided with FMLA leave in response to the February FMLA Request.  Therefore, while this first period of leave is important for interpreting whether either Plaintiff or Defendants are entitled to summary judgment, the focus of the analysis is Plaintiff's May FMLA Request, Defendants' denial of this request, and the subsequent termination of Plaintiff from his position.

**A.    FMLA Interference**

The FMLA prohibits employers from interfering with, restraining, or denying the exercise of a right under the FMLA.  29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(a)(1).  The plaintiff-employee has the burden of proving an FMLA interference claim.  *Goelzer v. Sheboygan Cty.*,

*Wis.*, 604 F.3d 987, 993 (7th Cir. 2010). To establish a claim for FMLA interference, an employee must show the following: (1) the employee was eligible for FMLA protection; (2) the employer was covered by the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee provided sufficient notice of his intent to take FMLA leave; and (5) the employer denied the employee FMLA benefits to which he or she was entitled. *Id.*; *McLaren v. Wheaton Coll.*, 194 F. Supp. 3d 743, 756 (N.D. Ill. 2016).

Here, there is no dispute that Plaintiff was eligible for FMLA protection and that the Defendant School District, Plaintiff's employer, was covered by the FMLA. There is also no dispute that Plaintiff was entitled to at least some additional leave under the FMLA at the time he submitted his May FMLA Request.[4] In his May FMLA Request, Plaintiff sought additional time to care for his mother who had been diagnosed with cancer. [30 (Defs.' Stmt. of Facts), ¶ 33]; [33 (Pl.'s Stmt. of Facts), ¶ 67]; [Ex. 7 to Ex. 3 (May FMLA Request)]. Caring for a parent with a serious health condition is an appropriate use of FMLA leave, under both the statute itself and the School District's FMLA policy. 29 U.S.C. § 2612(a)(1)(C); *Ballard v. Chi. Park Dist.*, 741 F.3d 838, 840 (7th Cir. 2014); see also [30 (Defs.' Stmt. of Facts), ¶ 10]. Furthermore, there is no dispute that Plaintiff's approved February FMLA Request, despite encompassing twelve calendar weeks, only encompassed eleven FMLA-eligible weeks. [30 (Defs.' Stmt. of Facts), ¶¶ 28–30, 32.] Therefore, at the end of Plaintiff's approved leave period, he was still eligible for one week of FMLA leave. [*Id.* ¶ 62.]

---

[4] In their Reply and Opposition, Defendants indicate that Plaintiff cannot meet the third element of his interference claim because he was not entitled to the fourteen additional weeks of leave in his May FMLA Request. [36, at 2.] However, this argument in reality addresses the fifth element of an FMLA interference claim—whether Plaintiff was denied a benefit to which he was entitled—and thus the Court addresses it in that context.

The parties' dispute turns on the fourth and fifth elements of Plaintiff's interference claim: whether Plaintiff provided sufficient notice of his intent to take FMLA leave, and whether Plaintiff was denied FMLA benefits to which he was entitled. The Court will address each element in turn.

### 1. Notice

Defendants argue that they are entitled to summary judgment because Plaintiff cannot establish compliance with the FMLA's timing of notice requirements and, therefore, Plaintiff cannot establish a *prima facie* case for FMLA interference. [28, at 5–7.] Specifically, Defendants argue that Plaintiff was required to provide in his FMLA leave request thirty days' advance notice before the requested leave was set to begin, and the record shows that Plaintiff's May FMLA Request was not submitted to Defendants thirty days before the start of the requested leave period. Plaintiff responds that he has demonstrated that he provided sufficient notice to Defendants through his February FMLA Request. Plaintiff further argues that his second request on May 9, 2016 provided Defendants with sufficient notice of changed circumstances requiring an extension of his leave because it was provided more than two business days prior to the end of his first FMLA leave period on May 15, 2016. [34, at 5–6.] Plaintiff also argues, in response to Defendants' summary judgment motion, that the School District never requested an explanation from him about the short notice he provided, so this notice argument should be deemed waived. [*Id.* at 14.]

An employee must provide his employer with sufficient notice of his need for FMLA leave; if he does not, the employer need not give the employee the requested leave. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 826 (7th Cir. 2012); see also *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 724 (7th Cir. 2007) ("We begin our inquiry with the question whether [plaintiff] gave [defendant] notice of her need for FMLA leave. If she did not, then [defendant] had no duty to give her this leave."). Governing FMLA regulations provide that an employee requesting FMLA

leave must give an employer notice of the need for FMLA leave that (1) states a qualifying reason for the needed leave and (2) otherwise satisfies the notice requirements for either foreseeable or unforeseeable leave. 29 C.F.R. § 825.301(b); *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 220 (7th Cir. 2015). The content of Plaintiff's notice (*i.e.*, whether it sufficiently informed Defendants that the leave Plaintiff was requesting in May was FMLA leave) is not being challenged here. Moreover, both Plaintiff and Defendants cite to the notice requirements for foreseeable leave only, 29 C.F.R. § 825.302, and thus the Court assumes that Plaintiff's requested leave was foreseeable and that this regulation applies to Plaintiff's May FMLA Request.

Section 825.302(a) provides that:

> An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable * * * If 30 days' notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable. * * * Whether FMLA leave is to be continuous or is to be taken intermittently or on a reduced schedule basis, notice need only be given one time, but the employee shall advise the employer as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown.

29 C.F.R. § 825.302(a). The regulation goes on to give further guidance on what "as soon as practicable" means when 30 days' advance notice of leave is not possible or if the dates of scheduled leave need to be changed or extended.

> As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case. When an employee becomes aware of a need for FMLA leave less than 30 days in advance, it should be practicable for the employee to provide notice of the need for leave either the same day or the next business day. In all cases, however, the determination of when an employee could practicably provide notice must take into account the individual facts and circumstances.

15

29 C.F.R. § 825.302(b). The School District's FMLA Policy also provides that when changed circumstances will alter the duration of FMLA leave, the employee must provide "reasonable notice" of those changed circumstances (specifically, within two business days if the changed circumstances are foreseeable). [Ex. 5 to Ex. 2 (FMLA Policy).] Employers are also entitled to require that employees comply with "usual and customary notice and procedural requirements" for requesting leave. *Brown v. Auto. Components Holdings, LLC*, 622 F.3d 685, 690 (7th Cir. 2010) (quoting 29 C.F.R. § 825.302(d)); *Scales v. FedEx Ground Package Sys., Inc.*, 2017 WL 345576, at *6 (N.D. Ill. Jan. 24, 2017). Failure to comply with such procedures "is a sufficient ground for denying FMLA leave requests." *McKenzie v. Seneca Foods Corp.*, 2017 WL 1155966, at *3 (W.D. Wis. Mar. 27, 2017) (citations omitted).

In this case, Plaintiff submitted his May FMLA Request to the School District's Human Resources department on May 9, 2016. [30 (Defs.' Stmt. of Facts), ¶ 33]. Defendant Brusak testified that he actually received these additional documents, and knew that Plaintiff requested additional FMLA leave time, on that date. [33 (Pl.'s Stmt. of Facts), ¶ 83.] This May FMLA Request sought an additional period of Plaintiff's leave time that would start on May 15, 2016 and end on September 30, 2016. [*Id.* ¶ 80]; [Ex. 7 to Ex. 3 (May FMLA Request)]. Plaintiff's earlier, approved FMLA leave was previously scheduled to end on May 15, 2016. [30 (Defs.' Stmt. of Facts), ¶¶ 5, 21–22.] Plaintiff has presented no evidence regarding the exact date on which he learned that he would need to take additional leave in order to continue caring for his mother. In his reply, Plaintiff asserts that he requested this extension "as soon as it was practicable" but provides no further support or citation for this assertion. [38, at 5.] However, Defendants did process this request and ultimately denied it on May 11, 2016. [30 (Defs.' Stmt. of Facts), ¶¶ 37–38.]

Considering Defendants' motion first, Defendants are not entitled to summary judgment on Plaintiff's FMLA interference claim based on a failure to provide sufficient notice. Defendants argue that Plaintiff's May FMLA Request required thirty days of advance notice before the requested leave was to begin—in other words, Defendants argue that Plaintiff's May FMLA Request should have been submitted to them by April 16, 2016. However, it is not clear that this full thirty-day period applies to Plaintiff's situation. Construing the record in the light most favorable to Plaintiff, the full thirty-day notice period set out in 29 C.F.R. § 825.302(a) would not apply to his May FMLA Request because he was seeking to extend his already approved FMLA leave period. In that instance, Plaintiff would only need to inform the School District of this request "as soon as practicable" because the dates of his previously-scheduled leave needed to be changed. 29 C.F.R. § 825.302(a). Plaintiff had already been approved to remain on FMLA leave until May 15, 2016, and he sought to extend his leave from that same date to a new date in the future. Plaintiff sought this extension for the same reason he had initially been approved for FMLA leave—to care for his mother with a serious health condition. If this was an extension rather than a new request, and the extension was requested because of a change in Plaintiff's mother's circumstances, thirty days' notice would not be required. See *Escriba v. Foster Poultry Farms*, 793 F. Supp. 2d 1147, 1160 (E.D. Cal. 2011) (disputed issues regarding whether plaintiff's need for FMLA leave was foreseeable or not, and on what date it became foreseeable, precluded summary judgment); *Leonard v. Uhlich Children's Advantage Network*, 481 F. Supp. 2d 931, 936–37 (N.D. Ill. 2007) (material issues of fact regarding when notice was feasible and whether employer was on notice that leave should have been extended precluded summary judgment on interference claim).

Of course, even if Plaintiff did not need to give thirty days' notice, notice of the extension "as soon as practicable" was required under § 825.302(a). As soon as practicable, according to the relevant regulation, usually means the same business day or the next business day upon learning of the need for leave or an extension of leave. § 825.302(b). Plaintiff, who has the burden of proving an FMLA interference claim, has provided no evidence of when he learned about the change of circumstances that would necessitate more leave in order to care for his mother.[5] It is Plaintiff's responsibility to identify evidence capable of establishing that he provided adequate notice of his need for FMLA leave. *Guzman v. Brown Cty.*, 884 F.3d 633, 639 (7th Cir. 2018); *Brown*, 622 F.3d at 692 (employee who did not demonstrate compliance with notice requirements not entitled to FMLA leave); see also *Cloutier v. GoJet Airlines, LLC*, 311 F. Supp. 3d 928, 944–45 (N.D. Ill. 2018) (denying summary judgment where genuine factual dispute exists regarding when plaintiff became aware he would need to take leave).

Ordinarily, that would mean Plaintiff failed to provide evidence of one element of his *prima facie* case. However, it is undisputed that Defendant Brusak sent a letter to Plaintiff, dated May 11, 2016, denying the May FMLA Request. [30 (Defs.' Stmt. of Facts), ¶ 37]; [Ex. 6 to Ex. 3 (FMLA Denial Letter)]. This letter states: "You submitted documentation on May 9, 2016 for additional time off. While I am aware this may be a difficult time for you, we are unable to approve the additional time you've requested. Under the rules of the Family Medical Leave Act, an

---

[5] Plaintiff argues that the School District's own policy only requires that he provide notice of a change in circumstances within two days of the end of his previously scheduled leave period, which he admittedly did. [See 34, at 6, 14.] The School District's policy states that reasonable notice that would alter the duration of FMLA leave must be provided "within 2 business days if the changed circumstances are foreseeable." [Ex. 5 to Ex. 2 (FMLA Policy), at 3.] This policy is not clear on its face as to whether the "within 2 business days" requirement means within two days of learning about the changed circumstances or, as Plaintiff contends, within two days of the requested end date of a previously scheduled leave. The Court will not interpret the exact meaning of this policy because, as further described below, it is ultimately irrelevant given the material question whether Defendants effectively waived the notice requirement by addressing and denying Plaintiff's May FMLA Request.

employee can only use up to 12 weeks of time off." [Ex. 6 to Ex. 3 (FMLA Denial Letter).] While FMLA regulations permit employers to require that employees follow their own internal leave procedures, an employer is also permitted to waive employees' FMLA notice obligations or the employer's own internal rules on leave notice requirements. See 29 C.F.R. § 825.304(e). Plaintiff's response to Defendants' summary judgment motion mentions waiver without specifically citing to these regulations. [34, at 14.] Still, as Plaintiff points out, this denial makes no reference to any deficiencies in the notice that Plaintiff provided to the School District, including its timeliness. By addressing, and denying, Plaintiff's May FMLA Request, a reasonable jury could conclude that Defendants did waive any timeliness objection in this situation.

This situation thus differs from the circumstances of *Brown v. Automotive Components Holdings, LLC*, 622 F.3d 685 (7th Cir. 2010), the case on which Defendants rely in support of their insufficient notice argument. In *Brown*, the plaintiff-employee had been approved for FMLA leave from August 11 to August 28, with a "return to work date" of August 29. On August 21, plaintiff learned that she would need to go to a doctor's appointment on August 29—the day that she was supposed to return to work—but the earliest indication in the record that plaintiff spoke again to her employer about extending her leave period was August 30. *Brown*, 622 F.3d at 687–88. At that time, FMLA regulations for unforeseeable leave required that employees give notice within no more than one or two working days of learning about the need for leave. *Id.* at 689 (quoting 29 C.F.R. § 825.303(a) (2007)). Because the plaintiff knew on August 21 of her need for an extended leave period, but the earliest that the plaintiff provided any notice was August 30, the Seventh Circuit held that as a matter of law the plaintiff failed to make out a *prima facie* case of FMLA interference. *Id.* at 690. There is no indication that the defendant-employer ever issued a decision or denial of any request that the plaintiff made for additional FMLA time off in *Brown*.

Here, while Plaintiff has not provided the date on which he learned that he would need to take extended leave, he has demonstrated that Defendants received, processed, and ultimately denied his May FMLA Request. [See 33 (Pl.'s Stmt. of Facts), ¶¶ 37, 80, 83.] A reasonable factfinder could conclude from this evidence that Defendants waived the notice requirement for Plaintiff in this specific instance, meaning that Plaintiff has satisfied the fourth element of a *prima facie* case for FMLA interference. Several district courts have indicated that this type of inference is reasonable in the context of an FMLA interference claim. See *Salgado v. CDW Comp. Ctrs., Inc.*, 1998 WL 60779, at *6 (N.D. Ill. Feb. 5, 1998) (denying defendant's motion for summary judgment based on a lack of timely notice because the record indicated a reasonable factfinder could conclude that notice was timely, but also noting that "it is questionable whether defendant can even raise the question of whether plaintiff's initial request for leave was timely" since, "[r]egardless of whether the request was timely or not, defendant granted permission to take two weeks' leave" and "[t]herefore, defendant appears to have waived any possible violation of the initial notice requirements"); see also *Petty v. United Plating, Inc.*, 2012 WL 2047532, at *15–16 (N.D. Ala. May 31, 2012) (noting in the context of an FMLA interference claim, while it was unclear whether plaintiff provided the requisite thirty days' advance notice to his employer of the need for his foreseeable FMLA leave, the employer "approved plaintiff's request for leave, and waived any objection to plaintiff's request on the grounds that plaintiff failed to provide sufficient notice"); *Platt v. Lamrite West, Inc.*, 2011 WL 3625564, at *9 (N.D. Ohio Aug. 17, 2011) (genuine issue of material fact precluded summary judgment, where defendant's behavior in giving plaintiff FMLA paperwork and instructing him to fill it out by a certain date could lead a factfinder to conclude that the defendant was waiving its typical internal notice requirements for plaintiff); *Rodriguez v. Ford Motor Co.*, 382 F. Supp. 2d 928, 935 (E.D. Mich. 2005) ("A reasonable jury

could conclude that Defendant Ford waived the two day notice requirement by continuing to request medical certification" from the plaintiff after receiving the late notice of potentially-qualifying FMLA leave).

In sum, a reasonable factfinder could conclude that Defendants waived the notice requirement in this situation by virtue of the fact that Defendants admit they received Plaintiff's FMLA Request and denied it for reasons other than a lack of notice. Alternatively, a reasonable factfinder could conclude that Defendants did not waive this requirement and Plaintiff did not provide notice as soon as practicable to Defendants of the request for leave, in which case Defendants were within their rights to deny the May FMLA Request on this basis. Given these competing scenarios, Defendants are not entitled to summary judgment on the FMLA interference claim based on the lack of notice issue, and Plaintiff's motion for summary judgment is also denied.

### 2. Denial of Benefits to Which Entitled

Defendants also argue that they are entitled to summary judgment on Plaintiff's FMLA interference claim because Plaintiff has not demonstrated that he was denied FMLA benefits to which he was entitled. Specifically, Defendants argue that (1) Plaintiff was not entitled to have his May FMLA Request approved because he was not entitled to an additional fourteen weeks of FMLA leave, and (2) Defendants were within their rights to terminate Plaintiff's employment pursuant to the School District's standard leave procedures.

### a. Denial of May FMLA Request

Defendants argue that Plaintiff's May FMLA Request sought an additional fourteen weeks of FMLA leave within the same twelve-month period that Plaintiff had already taken eleven weeks of leave. Therefore, Defendants claim they did not interfere with Plaintiff's FMLA rights by

denying this request. [28, at 2–5.] Plaintiff argues that he has demonstrated that he was only provided eleven weeks of FMLA leave, he requested an extension, and that request was denied despite his one week of FMLA-guaranteed leave remaining. Plaintiff also disputes that his May FMLA Request actually encompassed fourteen weeks of leave, as summer break would not count as FMLA leave and the request extended into the next school year, when the year would restart for FMLA purposes. [34, at 7, 11–13.]

The FMLA guarantees an employee twelve weeks of unpaid leave per year for a qualifying reason. 29 U.S.C. § 2612(a)(1)(C); *Caggiano v. Ill. Dep't of Corr.*, 2016 WL 362383, at *5 (N.D. Ill. Jan. 29, 2016). An employer is not required to give an employee more than twelve weeks of leave; in other words, "[a]n employer has no responsibility to restore a person's job if that twelve week period is exceeded." *Palao v. Fel-Pro, Inc.*, 117 F. Supp. 2d 764, 769 (N.D. Ill. 2000). However, denying an otherwise valid request for FMLA leave, when an employee still has a portion of their twelve weeks remaining, would constitute interference. See *Preddie*, 799 F.3d at 818; *Murray v. AT&T Mobility LLC*, 374 F. App'x 667, 671 (7th Cir. 2010) (citing *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009)); *Burnett v. LFW Inc.*, 472 F.3d 471, 478 (7th Cir. 2006).

Most of the material facts relevant to this element of Plaintiff's interference claim are undisputed. Plaintiff's February FMLA Request, which was approved, encompassed twelve calendar weeks. [30 (Defs.' Stmt. of Facts), ¶ 28.] However, one of those weeks was the School District's spring break. [*Id.* ¶ 29.] According to the School District's FMLA policy, spring break is not counted against the employee's FMLA leave entitlement. [*Id.* ¶ 30.] Therefore, Plaintiff had only used eleven of his twelve weeks of FMLA leave, and he was entitled to one more week of such leave.

Plaintiff made a second FMLA request for the period from May 16, 2016 to September 30, 2016. [30 (Defs.' Stmt. of Facts), ¶¶ 33, 35]; [33 (Pl.'s Stmt. of Facts), ¶ 80.] The parties dispute whether this actually constitutes fourteen weeks of additional FMLA leave, considering the fact that summer break fell within that period and it extended into the next school year. But Plaintiff does not dispute that this request encompassed more than the one week to which he was entitled and that he never made a request for one more week of FMLA leave only. [30 (Defs.' Stmt. of Facts), ¶ 34]; [33 (Pl.'s Stmt. of Facts), ¶ 62.] Defendants denied this second request for leave. The reason given in the denial letter sent to Plaintiff by Defendant Brusak was that Plaintiff had no FMLA leave remaining and he had exhausted his twelve weeks entitlement under the FMLA as of May 16, 2016. [Ex. 6 to Ex. 3 (FMLA Denial Letter).] The denial letter makes no mention of the request being deficient because it requests fourteen weeks of leave, although Brusak testified at his deposition that the request was plainly deficient on that basis. [30 (Defs.' Stmt. of Facts), ¶ 36.]

These undisputed facts make clear that Defendants denied Plaintiff's request for FMLA leave despite the fact that he was still entitled to FMLA leave. Thus, Plaintiff has established the fifth element of his FMLA interference claim, and Defendants are not entitled to summary judgment on this claim. See *Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 498 (7th Cir. 2014) ("In order to make out an interference claim, [plaintiff] had to show that she made a request under the FMLA and that [defendant] denied that request."); *Bertrand v. City of Lake Charles*, 2012 WL 1596706, at *6 (W.D. La. May 3, 2012) (finding after bench trial that City interfered with Plaintiff's rights under the FMLA by improperly counting holidays against her leave entitlement). Defendants do not dispute that Plaintiff was entitled to FMLA leave and they denied his request for FMLA leave. This denial itself constitutes interference with Plaintiff's

FMLA rights. Defendants point out that Plaintiff never made a request for just the one week of leave that he was entitled to, and Plaintiff admits this. [33 (Pl.'s Stmt. of Facts), ¶¶ 34, 62.] However, Defendants provide no citation or explanation for why that fact is legally relevant. Defendants also have not cited to any School District policy governing FMLA leave stating that an employee must only request the amount of leave he has remaining in order to be entitled to that FMLA leave. In other words, Defendants have not supported the argument that Plaintiff is not entitled to his one week of FMLA leave unless he submits a request to the School District that only encompasses that exact time period.

The pertinent case law suggests that the opposite is true. In *Cloutier v. Gojet Airlines, LLC*, 311 F. Supp. 3d 928 (N.D. Ill. 2018), for example, the employee, an airline pilot, brought an FMLA interference claim against the airline that employed him. The plaintiff's employer argued that the plaintiff was not protected by the FMLA because he had been grounded from flying for more than twelve weeks. The court rejected this argument, however, noting that while the FMLA does not require the airline to reinstate the plaintiff after the expiration of his twelve weeks of leave, "the cases that GoJet cites do not support the proposition that Cloutier's inability to return to his job [within twelve weeks] retroactively stripped him of the FMLA protections to which he was entitled for those first twelve weeks." *Id.* at 942. Similarly, while Plaintiff here was not entitled to more leave than twelve weeks, the fact that his request sought more than twelve weeks does not mean that he was not entitled to the one week of FMLA leave that he had remaining.

The only case that Defendants cite, *Palao v. Fel-Pro, Inc.*, 117 F. Supp. 2d 764 (N.D. Ill. 2000), supports the proposition that Plaintiff is only entitled to twelve weeks of FMLA leave in a twelve-month period. *Id.* at 769. This is true as far as it goes, and Plaintiff is not arguing that he was entitled to more than twelve weeks of leave. But he was entitled to those twelve weeks, which

he requested and which the School District denied to him when they denied his May FMLA Request. Therefore, Plaintiff has demonstrated that he was denied FMLA benefits to which he was entitled, establishing the fifth element of his *prima facie* case for FMLA interference, and Defendants are not entitled to summary judgment on this basis.

### b. Plaintiff's Termination

Defendants also argue that because Plaintiff failed to follow the notice provisions of the CBA, Plaintiff's termination was not an interference with his FMLA rights. [28, at 9.] Plaintiff argues that he did comply with all necessary notice provisions because he notified the School District of his intent to invoke his FMLA rights for the time he was deemed to be a no call-no show. [34, at 16.]

Using the taking of FMLA leave as a negative factor in employment actions, such as terminating an employee in order to prevent him from exercising his right to reinstatement to his position, can constitute interference with FMLA rights. *Preddie*, 799 F.3d at 818; *Goelzer*, 604 F.3d at 993 (citing *Simpson v. Office of the Chief Judge of the Circuit Court of Will Cty.*, 559 F.3d 706, 712 (7th Cir. 2009)). However, employers can require that employees follow "usual and customary notice and procedural requirements" for requesting leave so that the employer is not kept in the dark about the employee's expected return date. See *Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 972 (7th Cir. 2000) (employee that failed to report to work for three consecutive days without notifying company, in violation of governing collective bargaining agreement, could not prevail on interference claim); *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002) (discharge of employee who did not call in advance of absences, as required by employer's attendance policy, did not violate the FMLA).

Defendants argue that, because Plaintiff did not show or call for work on six consecutive days, the CBA allowed Plaintiff's termination on that basis. [See 28, at 10.] However, because the Court has already determined that Defendants are not entitled to summary judgment on Plaintiff's interference claim based on the denial of the May FMLA Request, which predated Plaintiff's purported no call-no shows, the Court need not address this argument.

## B. FMLA Retaliation

The FMLA also prohibits employers from discharging or otherwise discriminating against employees for exercising their rights under the FMLA. 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(a)(2); see also *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015). An employer may not consider the taking of FMLA leave as a negative factor in employment actions. 29 C.F.R. § 825.220(c); *King v. Preferred Tech. Grp.,* 166 F.3d 887, 891 (7th Cir. 1999). To establish a claim for FMLA retaliation, a plaintiff must demonstrate the following: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal link between the protected activity and the adverse action. *Carter*, 778 F.3d at 657. An FMLA retaliation claim differs from an FMLA interference claim in that a retaliation claim "requires proof of discriminatory or retaliatory intent" while an interference claim "requires only proof that the employer denied the employee his or her entitlements under the Act." *Kauffman v. Fed. Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). The Seventh Circuit evaluates claims of FMLA retaliation in the same manner as claims of retaliation under other employment statutes. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 781 (7th Cir. 2013) (citing *Buie v. Quad/Graphics Inc.*, 366 F.3d 496, 503 (7th Cir. 2004)).

According to Plaintiff, he has met his burden of demonstrating a *prima facie* case of retaliation because he engaged in a statutorily protected activity by exercising his right to take

FMLA leave, and he was subject to the materially adverse actions of being denied his right to take FMLA leave, being subjected to absenteeism, and ultimately being terminated from his position. [34, at 9–11.] Defendants, in turn, argue that they are entitled to summary judgment because Plaintiff cannot demonstrate the third element: a causal connection between the protected activity of Plaintiff's taking FMLA leave and Plaintiff's ultimate termination by the Board. [28, at 13–14.]

A causal connection in the context of an employment-related retaliation claim can be established either through direct evidence or circumstantial evidence. *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 800 (7th Cir. 2014). Such circumstantial evidence can "include suspicious timing, ambiguous statements from which retaliatory intent can be inferred, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." *Id.* The Court must consider "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's * * * proscribed factor caused the discharge or other adverse action." *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Plaintiff admits that he was not terminated for taking FMLA leave from February 23, 2016 to May 15, 2016. [33 (Pl.'s Stmt. of Facts), ¶ 60.] That leaves as a basis for Plaintiff's retaliation claim his May FMLA Request, the School District's denial of that request, and his ultimate termination for not coming back to work once his approved FMLA leave period ended. As evidence of a causal connection between his denied request and his termination, Plaintiff relies on (1) the misinformation that he received from Brusak and other School District employees regarding his FMLA leave, and (2) the timing of his write-ups for not calling into work and subsequent termination, which occurred during the week of May 16, 2016, when he was still entitled to some FMLA leave.

Regarding the misinformation that Plaintiff received, Plaintiff was told by Human Resources employee Bush in an e-mail that his approved period of leave ended on May 13, 2016, while Brusak told Plaintiff that this leave period ended on May 15, 2016.  [30 (Defs.' Stmt. of Facts), ¶¶ 37, 48.]  Plaintiff also was informed in the May 11 letter that his FMLA leave was exhausted as of May 16.  As previously discussed, this was not accurate, and he had one week of FMLA time remaining.  Defendants never advised Plaintiff of that fact [33 (P.'s Stmt. of Facts), ¶ 81], and it is not clear from the parties' statements of fact exactly when Defendants themselves became aware of the mistake.  Plaintiff was written up for not calling into or showing up for work beginning on that May 16 date, when he was still entitled to take FMLA leave, and might have been approved for that leave if the Defendants had not miscalculated Plaintiff's FMLA leave entitlement.

After Plaintiff failed to call in or show up for work on six consecutive days—five of which fell during what should have been his twelfth and final week of FMLA leave—Brusak prepared a Description of Job Performance documenting the absences, noting that Plaintiff's employment status would be amended to "unpaid administrative leave pending dismissal," and recommending dismissal for cause for the Board's consideration at its next scheduled meeting on June 9.  At that meeting, Brusak informed the Board that a notice had been sent to Plaintiff informing him that his leave was coming to an end and directing him to return to work.  Brusak also informed the Board that Plaintiff failed to respond to the e-mails and did not return to work.  However, it appears that Brusak did not convey to the Board (a) that Plaintiff had requested additional FMLA leave time or (b) that Plaintiff was actually entitled to remain on FMLA leave during the week of May 16, when he was tagged as a no call-no show.  (Again, while there is no evidence in the record

indicating that Brusak was aware of the latter fact; he certainly knew about Plaintiff's request to extend his leave time.)

This factual scenario presents two paths to disposition, one of which the parties have adequately briefed and one of which remains underdeveloped. Under the first scenario, based on what the Board knew at the time of its decision, Defendants likely would be entitled to summary judgment in their favor. It is undisputed that the Board, not Brusak, had the power to terminate Plaintiff's employment, and the Board was the decisionmaker that actually voted to terminate Plaintiff's employment based on the recommendation provided by Brusak. [30 (Defs.' Stmt. of Facts), ¶¶ 53–57.] It is also undisputed that, although Brusak received Plaintiff's May FMLA Request, he never passed along the request to the Board for approval or denial. [*Id.* ¶ 36.] Plaintiff does not point to any evidence that the Board otherwise knew about the May FMLA Request in which Plaintiff had requested and been denied further leave during the same period in which he was being written up for being a no call-no show. Nor is there any suggestion that the Board was aware of the computational error regarding Plaintiff's twelfth week of leave that all parties now agree was made. According to Defendants, absent any evidence that the Board, which actually made the decision to terminate Plaintiff, knew about Plaintiff's attempts to take additional FMLA leave, Plaintiff cannot establish the requisite causal connection between the Board's decision to terminate Plaintiff and his protected activity. See *Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 597 (7th Cir. 2017) (where the only admissible evidence on summary judgment established that plaintiff was terminated before his employer knew of his request for FMLA leave, it was impossible for the employer to have fired the employee because of that request); see also *Guzman*, 884 F.3d at 640 (where it was undisputed that person who decided to fire plaintiff on March 8, 2013 was not given the information that plaintiff might have requested FMLA leave, plaintiff

"cannot establish a causal link between requests for FMLA leave on or after March 8, 2013, and her termination").

But there is another possibility, unexplored by either party, that follows from the line of cases in this circuit and district discussing the "cat's paw" theory, pursuant to which the retaliatory motive of a non-decisionmaker who influenced an adverse employment action by omitting crucial information can be imputed to the decisionmaker who acted out of ignorance. See, *e.g.*, *Poer v. Astrue*, 606 F.3d 433, 438 (7th Cir. 2010) (reaffirming that "to impute a non-decisionmaker's allegedly improper motive to the employer, a plaintiff must demonstrate that the non-decisionmaker significantly influenced the employer's decision, 'either by withholding relevant information or providing false information'"); *Byrd v. Ill. Dep't of Pub. Health*, 423 F.3d 696, 711 (7th Cir. 2005) (explaining that a non-decisionmaker with a retaliatory motive may influence a termination decision through selective reporting of relevant facts); *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir. 1997) (holding that "the prejudices of an employee, normally a subordinate but here a coequal, are imputed to the employee who has formal authority over the plaintiff's job * * * where the subordinate, by concealing relevant information from the decisionmaking employee or feeding false information to him, is able to influence the decision"); *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990) (noting that a non-decisionmaker with a retaliatory motive may taint the decisionmaker's decision "by portraying [the employee's] performance to the committee in the worst possible light," and that the Committee might be "apt to defer to the judgment of" the manager who—unknown to the Committee—harbored a retaliatory motive); *Rasic v. City of Northlake*, 2010 WL 3365918, at *3–4 (N.D. Ill. Aug. 24, 2010) (holding that evidence submitted at trial on FMLA retaliation claim was sufficient to permit jury to conclude that retaliatory motive of police chief should be imputed to decisionmakers where chief did not

present evidence "that would have suggested that plaintiff's conduct did not warrant termination"); *Thompson v. Balkamp*, 2006 WL 1042792, at *5–6 (S.D. Ind. Apr. 19, 2006) (denying summary judgment on the ground that a jury could infer that the actions of a non-decisionmaker acting with animus influenced the decisionmaker "so greatly as to have caused the termination").

Here, we have Brusak's testimony that he denied Plaintiff's May FMLA Request without even submitting it to the Board because a request for fourteen weeks of additional FMLA leave was improper "on its face." Plaintiff counters that, had Brusak and Bush properly calculated Plaintiff's remaining allotment for the 2015-2016 school year and then applied his future allotment for 2016-2017, they would have recognized that he was asking only for a single week to which he did not have a clear statutory right. Had the Board been advised of Plaintiff's request, it might at a minimum have asked more questions or considered alternatives to termination.

In fact, some evidence in the record suggests that those questions might have been asked if the Board had the full story of Plaintiff's May FMLA Request. As Defendants admit, Board President Veronica Bonilla-Lopez knew that summer break, winter break, and spring break do not count towards FMLA leave. [37 (Defs.' Resp.), ¶ 76.] In her letter to Plaintiff dated June 9, 2016 terminating his employment, Ms. Bonilla-Lopez noted that Plaintiff was recommended for termination after a review of the May 23, 2016 description of job performance that placed Plaintiff on administrative leave. This description notes that Plaintiff "indicated [he] wanted to 'appeal' the end of [his] leave and extend it" to Brusak, but that Brusak indicated to Plaintiff "there was no provision" for such an appeal. [Ex. 4 (Description of Job Performance).] Without any indication that Plaintiff had submitted the May FMLA Request, this description of Plaintiff's actions at the end of May could appear unreasonable. But if the Board was aware of the May FMLA Request, perhaps Ms. Bonilla-Lopez or another Board member aware of the district's FMLA policies would

have questioned whether Plaintiff's request was as unreasonable as it seemed based on the limited information Brusak provided.

Furthermore, had those questions led to even a perfunctory audit or investigation, the mix-up regarding the week of leave time to which Plaintiff plainly was entitled might have been uncovered—which also might have led the Board to a different conclusion, either independently or in conjunction with the May FMLA Request. And to the extent that the Board may have questioned Brusak's rejection of Plaintiff's request for additional leave time on its face or viewed negatively his (and Bush's) miscalculation of Plaintiff's leave time, might one be able to infer from Brusak's errors, omissions, and potential motivation to secure a rubber stamping of his termination recommendation sufficient imputed animus to survive summary judgment? That question deserves further exploration, both legally and perhaps factually. See, *e.g.*, *HSBC Bank, USA, N.A. v. Davis*, 2014 WL 12775667, at *3 (N.D. Ill. July 7, 2014) (deferring ruling on summary judgment to permit additional development by the parties and permitting a renewed motion for summary judgment at a later date); *Hu v. Vill. of Maywood*, 2010 WL 276704, at *5 n.5 (N.D. Ill. Jan. 19, 2010) (noting authority of the court, *sua sponte*, to deny or continue a motion for summary judgment to permit further discovery under FRCP 56(d)). While Defendants' effort to avoid liability by painting the Board as an innocent actor may yet prevail, the failure of either side to explore the "cat's paw" theory outlined above gives the Court sufficient concern about prematurely extinguishing a potentially viable retaliation claim that it will allow the parties an opportunity to explore it before issuing a definitive ruling at the summary judgment stage on Plaintiff's retaliation claim.[6]

---

[6] The possibility of imputing Brusak's conduct and the motives for it to the Board also may influence the extent to which the Court may credit any legitimate, non-retaliatory reasons proffered by Defendants for the disciplinary actions that served as the basis for Brusak's recommendation to the Board. Compare *Burnett v. LFW Inc.*, 472 F.3d 471, 482 (7th Cir. 2006) (finding summary judgment inappropriate and that

## IV.     Conclusion

For the foregoing reasons, both Defendants' motion for summary judgment [28] and Plaintiff's motion for summary judgment [34] are denied.  The denial of Defendants' motion as to Plaintiff's FMLA retaliation claim is without prejudice to renewal after the further exploration of the legal issues set out above.  Both parties' motions for summary judgment as to Plaintiff's FMLA interference claim are denied.  This case is set for further status on September 19, 2018 at 9:00 a.m.

Dated: September 5, 2018

_____
Robert M. Dow, Jr.
United States District Judge

---

jury question remained where plaintiff had been terminated on the basis of insubordination but the conduct classified as insubordinate stemmed from the plaintiff's request for FMLA leave and thus employer's asserted reason for terminating an employee may not be "entirely separate from the request for FMLA leave"), with *Scruggs v. Carrier Corp.*, 688 F.3d 821, 827 (7th Cir. 2012) (affirming grant of summary judgment to defendant where the reason for plaintiff's termination was not the same as his protected activity).